IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARC R. LABGOLD, )
)
        Plaintiff, )
)
v. ) Civil Action No. 1-16-cv-01469 (AJT/IDD)
)
LINDA D. REGENHARDT, *et al.*, )
)
        Defendants. )
_____)

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 8] and Plaintiff's Motion for Leave to File First Amended Complaint [Doc. No. 19] (the "Motions"). Plaintiff Marc Labgold ("Plaintiff" or "Dr. Labgold") asserts a claim for legal malpractice against his former bankruptcy counsel, Defendant Linda Regenhardt ("Ms. Regenhardt"), and her firm, Defendant Linda Regenhardt, LLC (collectively, "Defendants"). Defendants removed this action from the Circuit Court for the City of Alexandria and now move to dismiss on the grounds that Dr. Labgold lacks standing because his malpractice claim is property of his bankruptcy estate and can therefore be brought at this point only by a trustee in bankruptcy as an asset of his bankruptcy estate. The Court held a hearing on March 10, 2017 on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, following which it took the matter under advisement. Plaintiff then filed his Motion for Leave to File First Amended Complaint in an attempt to address the issues raised in response to the initial Complaint, as they more fully developed at the March 10, 2017 hearing.

Upon consideration of the Motions, the memoranda in support thereof and in opposition thereto, the arguments of counsel at the March 10, 2017 hearing, and for the reasons below, the

Court concludes that (1) Plaintiff's claim for legal malpractice accrued no later than with the filing of his bankruptcy petition and therefore was, and remains, the property of the bankruptcy estate; (2) because his malpractice claim remains property of the bankruptcy estate, Plaintiff lacks standing to bring his malpractice claim and the Court lacks subject matter jurisdiction over this claim; (3) because it lacks subject matter jurisdiction over this removed case, the Court must remand the action to the state court from which it was removed; and (4) Plaintiff's attempt to amend his Complaint, as set forth in his proposed First Amended Complaint ("Amended Complaint"), would be futile because Plaintiff's malpractice claim, as alleged in the Amended Complaint, constitutes the same cause of action that is property of the bankruptcy estate, even though he now alleges that only acts of malpractice after the filing of the bankruptcy petition caused his injury. Therefore, the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED in part, insofar as the Court concludes that the plaintiff does not have standing to bring his claim, and is otherwise DENIED; Plaintiff's Motion for Leave to File First Amended Complaint is DENIED; and this case is REMANDED to the Circuit Court for the City of Alexandria.

## II. BACKGROUND

The following alleged facts are taken as true for the purposes of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction:

Plaintiff is a patent attorney who in 2006 became the chief executive officer of a biotechnology company, Antara Biosciences ("Antara"), which he left in July 2007. Antara was unsuccessful. Investors and former employees filed a series of lawsuits against Antara in late 2007. In September 2012, Plaintiff was joined as a defendant in the lawsuit by the former

2

employees. On December 21, 2012, Plaintiff married his wife. On January 7, 2013, on the advice of counsel not party to this action, he transferred ownership of his house (the "Property") to himself and his wife as tenants by the entirety. At this time, Dr. Labgold's law practice was generating significant monthly revenues, and he expected the Antara litigation against him to be settled. In Spring 2013, the Antara litigation settlements failed, and the monthly revenues from his law practice significantly declined.

In April 2013, Dr. Labgold met with Ms. Regenhardt to discuss his financial situation and the possibility of filing for Chapter 11 bankruptcy. Ms. Regenhardt learned of Dr. Labgold's transfer of the Property at this meeting. Dr. Labgold retained Ms. Regenhardt on April 23, 2013 and signed a written agreement with respect to that representation. In June 2013, Dr. Labgold informed Ms. Regenhardt that he wished to proceed with the preparation and filing of a Chapter 11 bankruptcy petition, which she began preparing with information provided by him. Based on her review of the information, Ms. Regenhardt advised Dr. Labgold to immediately file a Chapter 7 bankruptcy petition. She then prepared the Chapter 7 petition that he filed on July 23, 2013. In preparing the petition, Ms. Regenhardt understated Mrs. Labgold's income and did not fully list the assets of Dr. Labgold's law practice. She also failed to disclose the transfer of the Property, even though it was transferred within one year of filing the petition. The bankruptcy trustee discovered this transfer in the bankruptcy proceedings and, on January 27, 2014, brought an adversary complaint in those proceedings alleging that the transfer was made within two years of the filing of the petition with the intent to hinder, delay, or defraud creditors, or, alternatively, that it was made for less than its value while Dr. Labgold was insolvent. Dr. Labgold eventually paid $180,000 to the bankruptcy estate to settle this adversary complaint.

3

Also on January 27, 2014, the U.S. trustee filed another adversary complaint against Dr. Labgold in the bankruptcy proceedings, this time objecting to his discharge on the grounds that his transfer of the Property was made within one year of the filing of the petition with the intent to hinder, delay, or defraud creditors. The United States Bankruptcy Court for the Eastern District of Virginia tried that claim on December 11, 12, and 15, 2014. At that trial, Ms. Regenhardt testified that she made a number of mistakes in the petition, including failing to disclose the transfer of the Property, which Dr. Labgold had disclosed to her. Despite this testimony, Ms. Regenhardt never advised Dr. Labgold to amend the petition or about the consequences of not amending it.

On January 15, 2015, the Bankruptcy Court denied Dr. Labgold's discharge of his unsecured debts in excess of $600,000 pursuant to 11 U.S.C. § 727(a)(2)(A). As the basis for its decision, the Bankruptcy Court found "given the circumstances surrounding the transfer, that the [Plaintiff] intended to hinder, delay or defraud his creditors when he transferred the [Property] to himself and his wife as tenants by the entirety." [Doc. No. 27-1 at 15.] In support of that finding, the Bankruptcy Court concluded that "[t]he transfer of the [Property] evidenced virtually all of the badges of fraud with the exception of concealment of the transfer." [*Id.* at 11.] It also rejected Plaintiff's claim that the transfer was for estate planning purposes. [*Id.* at 12.] It further found that "[t]he [Plaintiff], while not a real estate attorney, went to law school and would have understood that the effect of a transfer of property to himself and his wife as tenants by the entirely would have been to put the property beyond the reach of the Antara creditors, who were not joint creditors of the [Plaintiff] and his wife." [*Id.* at 15.] Given the magnitude of his liabilities listed in his petition relative to his listed assets and his additional, unlisted potential

4

liabilities to the Antara creditors, the Bankruptcy Court found "unconvincing" Plaintiff's claim that he believed that in the event of a judgment in the California Antara litigation, he, along with his co-investor in Antara, would have been able to satisfy the judgment. [*Id.* at 13.] On August 14, 2015, this Court affirmed the decision of the Bankruptcy Court, as did the United States Court of Appeals for the Fourth Circuit on April 5, 2016. On October 4, 2016, Dr. Labgold's bankruptcy case was closed and the trustee was dismissed without any disclosure of his malpractice claim against Ms. Regenhardt. Because he was not discharged, the claims against Dr. Labgold in the Antara litigation continued, as a result of which Dr. Labgold has expended substantial sums in settlement and attorneys' fees.

On July 21, 2016 (before the bankruptcy case was closed and the trustee dismissed), Dr. Labgold filed this action in the Circuit Court for the City of Alexandria, which Defendants removed to this Court on November 28, 2016. In his Complaint, Plaintiff alleges that Ms. Regenhardt committed various acts of malpractice, both before and after the filing of the bankruptcy petition, that caused his unsecured debts not to be discharged. *See* Compl. [Doc. No. 1-1] ¶¶ 19-37. In particular, Dr. Labgold alleges that Ms. Regenhardt committed malpractice when she advised Dr. Labgold to file the Chapter 7 bankruptcy petition within a year of the transfer of the Property and thereafter with respect to her post-petition advice concerning how to handle the bankruptcy litigation surrounding that transfer. He alleges that "Ms. Regenhardt's most egregious error—and the reason both the Bankruptcy Court and the United States District Court for the Eastern District of Virginia gave for the continued denial of discharge for Dr. Labgold's debts—was that Ms. Regenhardt did not disclose the transfer of the real estate on the petition even though she knew that Dr. Labgold had transferred the property approximately six

month prior to the bankruptcy petition." [*Id.* ¶ 21.] He alleges that "[t]his failure led directly to the bankruptcy Trustee questioning Dr. Labgold's motives and credibility." [*Id.* ¶ 22.]

## III. STANDARD OF REVIEW

The party invoking the court's jurisdiction typically bears the burden of proving the existence of federal subject matter jurisdiction. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). The court's review of subject matter jurisdiction is generally based on the allegations in the complaint, taken as true, but the court may in certain circumstances resolve factual disputes. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) ("[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous."). Here, because resolution of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction does not turn on factual disputes, the Court will accept as true the factual allegations in the Complaint.

## IV. ANALYSIS

Under the relevant bankruptcy statute, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It also includes "[a]ny interest in property that the estate acquires after the commencement of the case." *Id.* § 541(a)(7). "The scope of Section 541 is broad and includes intangible property such as a cause of action." *In re Wilson*, 94 B.R. 886, 888 (E.D. Va. 1989). When a bankruptcy case closes, property that was disclosed to the trustee and not administered is abandoned back to the debtor. 11 U.S.C. § 554(c). On the other hand, property that was not disclosed remains the property of the estate even after the case is closed. *See id.* § 554(d).

The parties agree that Dr. Labgold did not disclose his legal malpractice claim during the pendency of his bankruptcy proceeding. Consequently, if that claim was the property of the bankruptcy estate, it remains the property of the estate, not of Dr. Labgold. The issue is therefore whether Dr. Labgold's claim for malpractice existed at the time his Chapter 7 petition was filed. That question is determined by when that cause of action accrued under Virginia law. In this regard, the Court follows the weight of authority in holding that if a malpractice claim accrued post-petition, it is property of the debtor rather than the estate and therefore not a part of the estate.[1] *See, e.g., In re Holstein*, 321 B.R. 229, 235 (Bankr. N.D. Ill. 2005) ("Put simply, '[p]re-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not.'") (quoting *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042 (11th Cir. 2004)) (alteration in original).

---

[1] The Court recognizes that in its unpublished, non-precedential opinion in *In re Richman*, 117 F.3d 1414 (Table), 1997 WL 360644 (4th Cir. 1997) (per curiam), the Fourth Circuit made an alternative holding that legal malpractice claims arising post-petition are property of the bankruptcy estate. *See* 4th Cir. R. 32.1 (citation of unpublished opinions).

7

There are three elements to a legal malpractice claim under Virginia law: "1) the existence of an attorney-client relationship creating a duty; 2) a breach of that duty by the attorney; and 3) damages that were proximately caused by the attorney's breach of duty." *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009).

A legal malpractice claim is a breach of contract claim. *Shipman v. Kruck*, 593 S.E.2d 319, 322 (Va. 2004) ("The statute of limitations for legal malpractice actions is the same as those for breach of contract because although legal malpractice actions sound in tort, it is the contract that gives rise to the duty."). By statute, a "right of action" in a contract claim accrues on the date of breach. *See* Va. Code § 8.01-230 ("[T]he right of action shall be deemed to accrue . . . when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered. . . .") In *Shipman,* a lawyer committed malpractice when he filed a bankruptcy petition for the Shipmans. The issue considered by the Supreme Court of Virginia was "whether on that date, or at a later time, the Shipmans sustained injury or damage sufficient to constitute a cause of action." *Shipman*, 593 S.E.2d at 323. The Court reiterated that "it is immaterial whether all the damages resulting from the negligent act were sustained at the time that act occurred" and, relying on Va. Code § 8.01-230, concluded that "[u]pon the filing of the bankruptcy petition the Shipmans incurred a legal injury." *Id.* at 323. "Although the injury could not be delineated as a sum certain or reflected as a final judgment on the merits," it explained, "there was injury sufficient to commence a cause of action for legal malpractice." *Id.* As a result, "[f]irst and foremost, the Shipmans lost control of their assets to the Bankruptcy Trustee," and "[e]ven the Shipmans' right to bring a legal malpractice claim vested in the Bankruptcy Trustee." *Id.* Here, as in *Shipman*, Plaintiff's "cause of action for malpractice," as

alleged in the Complaint, accrued "as of the commencement of the case," 11 U.S.C. § 541(a)(1), and the cause of action became property of the estate. Plaintiff therefore does not have standing to bring that claim and the Court is without subject matter jurisdiction over it.

In his proposed Amended Complaint, Dr. Labgold has abandoned his originally pled theory of causation and now contends that his malpractice claim against Ms. Regenhardt is a separate and distinct cause of action based solely on her post-petition breaches: "[T]he injury Dr. Labgold sustained was the denial of discharge. Dr. Labgold does not allege that the denial of discharge was caused by the improper filing of the petition. Rather, the denial of discharge was caused by Ms. Regenhardt's breaches and advice that she provided after the petition was filed." Pl.'s Reply in Supp. of Mot. for Leave to File First Am. Compl. [Doc. No. 27], at 3. For the purpose of determining whether the Court would have subject matter jurisdiction over the proposed Amended Complaint, the question therefore reduces to whether Dr. Labgold's malpractice claim, as alleged in his proposed Amended Complaint, constitutes the same or a different cause of action than that which had accrued as of the filing of the bankruptcy petition and was therefore property of the bankruptcy estate.

In support of his contention that he is entitled to pursue what he has alleged is a completely separate and distinct cause of action, Plaintiff argues that "[w]hether the denial [of discharge in bankruptcy] was caused by Ms. Regenhardt's post-petition breaches—as Dr. Labgold alleges—goes to the merits of the legal malpractice claim, not to standing," and that "at the very least it is a jury question as to whether the subsequent breaches caused a distinct harm." [*Id.* at 3 & n.2.] In that regard, Plaintiff now alleges, directly contrary to his previous allegations, that Ms. Regenhardt's failure to disclose the transfer in the petition, "while a breach

9

of standards of care, did not cause damage to Plaintiff" and that "[b]ut for Defendants' breaches of the standards of care [that are alleged to have occurred after the filing of the petition], . . . the U.S. Trustee would not have filed the action to deny Labgold's discharge or would not have prevailed." [Proposed] First Am. Compl. [Doc. No. 19-1] ¶¶ 18, 40.

Plaintiff's position cannot be reconciled with the holding in *Shipman*. The Shipmans argued, as Plaintiff does here, that they were not sufficiently injured by the acts of legal malpractice that had occurred with the filing of the bankruptcy petition. The Supreme Court of Virginia rejected that claim on the grounds that as a matter of law, the Shipmans, by virtue of the negligent bankruptcy filing, had sustained a "legal injury" "sufficient to commence a cause of action for legal malpractice." *Shipman*, 593 S.E.2d at 323. So too here. The alleged pre-petition negligence caused as a matter of law a "legal injury" sufficient for a cause of action for malpractice to accrue. This cause of action also encompasses the alleged post-petition breaches, all of which amount to a continuing failure to correct the original (and principal) breach of filing the petition within a year of transfer of the Property. *See* [Proposed] First Am. Compl. [Doc. No. 19-1] ¶ 39. Based on Plaintiff's allegations in either the Complaint or the proposed Amended Complaint, there is only one cause of action for legal malpractice against Defendants. That claim accrued no later than the filing of the Petition.[2]

---

[2] The accrual date on plaintiff's malpractice claim for the purpose of determining whether it is bankruptcy estate property is not affected by the "continuous representation rule" that tolls the running of the statute of limitations. As *Shipman* makes clear, the continuous representation rule does not alter when the legal malpractice claim comes into existence but rather determines the date that the statute of limitation begins to run. *Id.* ("In other words, the Shipmans could have brought an action against Kruck at any time after the bankruptcy petition was filed. However, that does not necessarily establish the date the statute of limitations began to run for purposes of a legal malpractice action."); *see also Harris v. K & K Ins. Agency, Inc.*, 453 S.E.2d 284, 286 (Va. 1995) ("As a general rule, the statute of limitations begins to run against a cause of action at the time of its accrual. But where there is an undertaking which requires a continuation of services, the statute of limitations does not begin to run until the termination of the undertaking.") (alteration in original) (internal quotation marks omitted).

Plaintiff relies upon the principle, supported by case authority, that there may be multiple causes of action resulting from multiple breaches of the same contract. *See, e.g., Waites v. Wells Fargo Bank, N.A.*, No. 2:15-cv-353, 2016 WL 659084, at *2 (E.D. Va. Feb. 16, 2016) ("[W]hen wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action.") (quoting *Hampton Roads Sanitation Dist. v. McDonnell*, 360 S.E.2d 841, 843 (Va. 1987)). But that principle is premised on "[a] distinct wrongful act that inflicts a new injury." *Id.* at *3. It does not apply where there is only one injury arising from multiple breaches of the same contract. *See Kiser v. A.W. Chesterton Co.*, 736 S.E.2d 910, 916 (2013) ("The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action.") (quoting *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 321 (1927)). Here, the alleged injury in both the original Complaint and the Amended Complaint is the same—the denial of discharge and legal fees. *Compare* Compl. [Doc. No. 1-1] ¶¶ 29, 40, *with* [Proposed] First Am. Compl. [Doc. No. 19-1] ¶¶ 35, 40. All of the alleged breaches, both pre- and post-petition, arise out of a continuous course of representation pertaining to a single scope of representation (plaintiff's bankruptcy), established through a single contract for representation. There is no distinct injury attributable to post-petition negligence rather than pre-petition negligence.

Plaintiff argues that it is for a jury to determine which acts of negligence caused the alleged injury. But the factual allegations of both complaints make clear that the alleged injury flowed directly from the pre-petition breaches and that it is impossible to divorce the pre-petition breaches, including the filing of the petition itself, from the post-petition breaches in determining what caused the undesired outcome in Dr. Labgold's bankruptcy case. Indeed, based on the

factual allegations, it is difficult to see how the pre-petition negligence—the advice to file and the filing of the petition—was anything other than a "but for" cause of the alleged injury that the plaintiff asserts in his proposed Amended Complaint. *See* [Doc. No. 27-1], at 15 (where the Bankruptcy Court denied the discharge based on "the circumstances surrounding the transfer," not the litigation posture).

For the above reasons, the Court concludes that Plaintiff's legal malpractice claim, as alleged in the Complaint, was property of the bankruptcy estate under 11 U.S.C. § 541(a)(1). Because Dr. Labgold did not disclose that cause of action in the bankruptcy case, it was not abandoned back to him upon the closing of the bankruptcy case under 11 U.S.C. § 554. The bankruptcy trustee is therefore the only party who can currently decide whether to bring this claim against Defendants. Accordingly, Plaintiff lacks standing to bring this claim, and the Court lacks subject matter jurisdiction over it. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) ("If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim."); *Vanderheyden v. Peninsula Airport Comm'n*, No. 4:12-cv-46, 2013 WL 30065, at *9 (E.D. Va. Jan. 2, 2013). For the same reasons, the Court concludes that it would not have subject matter jurisdiction with respect to the malpractice claim asserted in the proposed Amended Complaint; and Plaintiff's Motion for Leave to File First Amended Complaint must be denied on the grounds of futility. Because the Court lacks jurisdiction, it must, by statute, remand the case to state court in these circumstances. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.") (emphasis added); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) ("Of course, if the court on

remand concludes that it does not have subject matter jurisdiction, then it will be obligated under § 1447(c) to remand the case to the state court."); *Roach v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996) (holding that remand rather than dismissal was required in removed case where the district court lacked subject matter jurisdiction because of the Eleventh Amendment).

## VI. CONCLUSION

For the above reasons, the Court concludes that (1) Plaintiff's cause of action for legal malpractice was, and remains, the property of the bankruptcy estate; (2) because his malpractice claim remains property of the bankruptcy estate, Plaintiff lacks standing to assert his malpractice claim and the Court lacks subject matter jurisdiction over this claim; (3) because the Court lacks subject matter jurisdiction over this removed case, it must remand the action to the state court from which it was removed; and (4) Plaintiff's attempt to amend his Complaint, as set forth in his proposed Amended Complaint, is futile. Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 8] be, and the same hereby is, GRANTED in part and DENIED in part; it is granted to the extent that the Court concludes that Plaintiff does not have standing to bring his claim and the Court is therefore without subject matter jurisdiction; and it is otherwise DENIED; and it is further

ORDERED that Plaintiff's Motion for Leave to File First Amended Complaint [Doc. No. 19] be, and the same hereby is, DENIED; and it is further

ORDERED that this case be, and the same hereby is, REMANDED to the Circuit Court for the City of Alexandria

The Clerk of the Court is directed to forward copies of this Memorandum Opinion and Order to all counsel.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 14, 2017